Amtrak 1991 and Barnett Jr. v. Amtrak 1996. So I understand that Mr. Barnett and Mr. Barnett Jr. you will argue for some amount of time first, and you've each reserved some time for rebuttal, one minute for Mr. Barnett, two minutes for Mr. Barnett Jr. Okay, so Mr. Barnett, come on up. Good morning. Good morning. Please, this Honorable Court, my name is Anthony Barnett and I am a pro se litigant, representing myself in this matter of Barnett v. Amtrak. I'm here today to appeal the District Court's partial judgment for summary judgment in the matter. And the basis of my appeal is that there were issues in dispute, material fact issues, that should have allowed the case to go to discovery. Under the heightened pleading standards in Twombly, most Title VII cases require four elements. And we had met three of the elements in the hearing of March 27, 2018, from the Honorable Judge's failure, where counsel admitted that one, there was timeliness, two, there was a causal connection, three, there was an injury, the failure to hire. In addition, under the McDonnell-Douglas v. Groon standard, defendants never provided a legitimate, non-discriminatory reason for their failure to hire, which was part of the burden shifting initially sought before Twombly. But not to go off into that tangent. If you have a claim that they discriminated against you for, that they didn't hire you for impermissible reasons, right? Well. So you said that they know about your previous protected activity because you wrote it on your application. Yes. And they introduced a copy of your application. Yes. Now, did you introduce anything in response that suggests that that is not a correct copy? Well, what I did was I disputed that fact, and as discovery had never been open, as this defendant had not answered, this was a. . . You put that in a sworn affidavit. Yes. Yes, sir. What did you say in the sworn affidavit? In my sworn affidavit I said there is no paper material that I have in my possession that would prove or disprove whatever it is that the defendants were saying. Did you see the application? I saw what they presented to me, and there were some. . . Was that your application? No. When I saw it initially, I immediately sent a letter to the court saying, I'm disputing the validity of this under Federal Rules of Evidence 901. And you said that in your application you told them about what had happened in your prior job. Yes. And what came to find out after the fact or during the fact of the time lapse, because there was a lot of time from the time that I filed the EEO paperwork when they took their tangible action and the actual first hearing on March 27th, I came to find out that James Halloran, one of the supervisors involved with my termination and the entire process at New Jersey Transit, was now currently at Amtrak. Before we go into that, can I just ask another question about your application? Sure. So Amtrak introduces a copy of the application, and they have two affidavits, one from a custodian saying it's an authentic copy, and one from an IT person saying this could not have been tampered with, this is authentic. I understand that. You dispute those characterizations? Yes. So you think that they tampered with it? I did, yes, and I do, yes. What's your position that this was a falsified version of the document? Well, my view is that it's inaccurate, only because the values on one that they presented are not the same on the other. Now, as an additional matter in my son reviewing his profile, it appears that in both cases they were using the resume of Anthony James Barnett, which is myself, instead of Anthony Barnett, Jr., which would be his application, and we only know that from pulling out the files that we have. Was there a way to copy the application you pulled in? No, it was on a server. There's no way to copy it. Their server is an online closed-in type deal where you just reply. You would testify at trial under oath. Yes. I put an application in my application. I told them about what had happened to me and the protective activities I had engaged in with respect to my prior employer, and this application that they have introduced, that Amtrak has introduced, doesn't have my application. It may be some other application, but that's not the application that I submitted. No, that's not what I would say either. What would you say? What I'm saying is that it is partial. There are values missing. In other words, where it says reason for leaving, there's a clear question. So the full application is not that they have, is not the full application that I submitted? That I submitted, yes. You think they've deleted those sections from the application before submitting it to the court? Excuse me? You think they've deleted those sections from your application before they've submitted it to the court? Well, not being an IT person, it's confusing to me that they could even present something that says no selection made when I'm very clear and adamant, especially with the previous four and a half to seven years of litigation ongoing, clearly about constructive discharge that I would not include that information because this employer is certainly going to inquire, has to inquire, because it's a locomotive engineer's position. It's not just a job where I could just say I work there. They would want to know the reasons. You're not actually saying that they, you don't know. I don't know. Right. But you're saying I submitted an application and it might be an error, it might be some other issue, but the application that Amtrak says I submitted is not the application that I, in fact, submitted. That's what you're saying? That's what I'm saying, yes, sir. Okay. Thank you. Thank you. Mr. Barnett, Jr. Good morning, Your Honors. Anthony Barnett, Jr. Simply put, it's pretty much the same. My case revolves solely around my father, Mr. Barnett, Sr. I have – Explain that to me. Why are you – it's his protected activity, so why Thompson v. North American Stainless Steel creates its own venture? So I happen to be – what do you call it? What's the word I'm looking for? I'm just up in the air. Collateral damage. Okay. Do they discriminate against you because of his protected activity, because of your association with him? Yes. And I have actually found evidence to prove that, but being that we never got to discovery, I can offer it up now. You can do whatever you want, Mr. Barnett. Okay. You proceed. Here I have a candidate profile, and it says Anthony James Barnett's resume. That would be the same thing that's on his, if you look at Essay 144. If you look at Essay 123, page 2, supplemental appendix, it shows his candidate profile. Say it again. What's the page? Essay 123, page 2. And it shows his candidate profile, so it says Anthony James Barnett, and then on the right-hand corner it says Anthony James Barnett's resume. Now, I was able to log into Amtrak's – the server, and I would pull out my candidate profile, and it says the same exact thing. It last being updated July 25, 2015. The same exact thing. And I pulled that on May 21, 2015. Then on May 7, I pulled up my actual – I guess this would be my application from the actual requisition number that was in question, for New York 901-816-52, and the resume is not the same as what's in my candidate profile. Now it says Anthony James Barnett, Jr.'s resume, and that was updated July 31, 2018, three years after the acquisition closed, and I was already told no. So you would testify about that? Yes. Presumably, assuming that this is legitimately a discovery. So what does that mean? You're saying that Amtrak replaced your resume with his? That's what I believe, yes, because I had no need to – I would think that a jury would find it reasonable and plausible to believe that. Why would I go and change my resume after I've already been told no three years ago? Anything else? I said, why would I say no? I said, why would I go and change my resume on something I was already told no to three years prior? Thank you. You each reserve some time for rebuttal. We'll hear from the lawyer for Amtrak. Good morning. Good morning, Your Honors. May I please report? My name is Lisa Griffiths. I'm an attorney for the defendant Appellee National Railroad Passenger Corporation, otherwise known as Amtrak. With regard to the appeals brought by Mr. Anthony Barnett, Sr. and Anthony Barnett, Jr., for the reasons set forth in our brief, we believe that the district court's decision should be upheld. Barnett – I'm sorry. First, the district court properly converted defendant's motions to dismiss to motions for summary judgment. Second, plaintiffs waived any appeal on the main issue, i.e., whether Amtrak had knowledge of Mr. Barnett, Sr.'s protected activity with New Jersey Transit. And three, even if the court finds that the Barnetts did not waive the appeal on the main issue, the plaintiffs' appellants fail to establish a genuine issue of material fact with regard to the essential element of the retaliation claim, which is the knowledge element. Why do we not have an essential issue? So I know that we have some cases, like Scott v. Harris, when you have some documents or some videotape or something. You can't just assert that it's false, right? Is that right? Yes. He has an affidavit. He's got some evidence that's controverting the document that you submitted. He says, I swear, based on my recollection, that I did put that information, and it didn't just say no selection. And so that controverts the application that you put into evidence. Why isn't that enough? Because on summary judgment, a non-moving party has to set forth specific facts showing there's a genuine issue for trial. Just merely denying the allegations is not sufficient. He's not just denying the allegations. He's saying, I put in the job application that provided some information, some significant information about protected activity, and his son, Mr. Barnett, Jr., is going to presumably be able to testify if he gets to trial. You know, ABTRACT makes mistakes. It makes mistakes about names. It makes mistakes about the timing of applications and so on. And so then we'd have to, if we were to agree with you, say that no reasonable juror could find these two gentlemen credible. That is correct, Your Honor. But if it's a credibility issue, then why not let it go to trial? I don't believe it's a credibility issue because we have authenticated our documentation through our declarant. ABTRACT is very credible. And their documentation on their file for the job application is what we have produced. We don't have any job application that we have on file that suggests that. Okay, so your credibility and trans-credibility, its system, that's great. You'll win a trial, if you're right. Well, we don't need to get to trial, Your Honor, because they have not provided any evidence other than their mere denials, or they didn't even sufficiently challenge. It's not enough under Second Circuit law. So why is it not enough that you have an affidavit that squarely disputes, with a factual allegation that I submitted this job application, the fact that you want us to credit, which is that their job application, his job application, did not include a reference to the prior protected activity? Because, Your Honor, the plaintiffs are merely saying that, based on speculation, that we must have altered their documentation. But we did not, and we have a declarant that specifically said that. So there's the Supreme Court case, Scott v. Harris, that I mentioned. So we said in a case called Markavage v. City of New York, although in summary judgment the evidence must be viewed in the light most favorable to plaintiffs of the non-moving parties, when there is reliable objective evidence, such as a recording, the evidence may speak for itself. So I guess if we had a case where there was a recording of him supplying for the job, we would say, well, him just asserting that that's not an accurate recording, it wouldn't be sufficient to overcome summary judgment. But he's saying, maybe he's saying, this is different than that, because this document might have been easily doctored, and maybe it's not reliable objective evidence. So why should we see the document that you submitted, the application, as reliable objective evidence that would require him to come forward with more than just an assertion that it's not accurate? Well, the judge gave him an opportunity to provide more than just an assertion, and he hasn't provided any additional – Well, what could he have provided? So if he's in this position where his recollection is he wrote something else on his application, but the system didn't allow him to retain a copy of it, what would have allowed him to overcome summary judgment? First, I don't know that the system wouldn't let him keep a copy of it. He probably could have printed it out. Secondly, I don't think that was an issue before the court. You say you do not think that was an issue? I don't believe that was an issue before the court, whether he could print it out. But he didn't provide any supporting evidence for his argument that this is what he submitted. And in contrast, we have what is going to be the only evidence at trial, which is the person, the declarant in the IT department, who's going to testify that there's no way that we could have altered this. He is in possession of a unique password that he created himself, and only the person with that password can go in and change the information on the application. Controverting the statement that it couldn't be altered, right? Maybe evidence about prior – did he have a history of applying for jobs? Would he always reveal this kind of information? Not that I know of. Not with Amtrak, at least. But he didn't provide that. He was given ample opportunity by the district court on notice to provide whatever evidence and arguments he had to dispute our position, and he didn't provide anything other than that's – I know that what I wrote was different. But if we were to conclude that what he provided was enough, then he didn't need to provide any more. I don't see how that would create an issue to go to trial. It's just in the district court's position, whether or not he could ever prove that Amtrak had knowledge, it's never going to happen because he's only going to say that's not the application I submitted, and then we're going to go to trial on the same information that we have before the court now, which is the declarant saying there's no way it could have been altered. So why continue with discovery in a case where we know the outcome is going to be the same? The Fifth Amendment requires a trial. I mean, summary judgment is what it is, and if there is a credibility dispute, if there is a dispute based on reliable evidence on both sides and reliable evidence in this case, admissible evidence, is a sworn statement by the two plaintiffs here, then it goes to trial. I mean, you may not like it, I may not like it, but that's our case law. And there is no recording. There is no just devastating proof. It's Amtrak saying, oh, you know, this is our system and this is the job application, and the plaintiff's saying that's not our job application. I believe it is akin to a recording. It is an electronic recording of the application, and we had two separate declarants declare that this was the true and accurate copy they had on file. And on top of that, there were other arguments that we made, including that the plaintiffs waived any argument as to the sufficiency of the evidence because they didn't raise it in their appellate brief. They really only contested whether or not it was proper for the judge to convert the motion to dismiss to one for summary judgment. And pro se plaintiffs are held to the same standard. I didn't hear what you said. What is it you said they didn't raise? They didn't raise the issue on the main issue, which is whether or not there was sufficient evidence to grant summary judgment. They've only raised on this appeal whether or not the district court judge properly converted the motion to dismiss to one for summary judgment to begin with. So pro se plaintiffs are held to the same standard as any other litigants in front of the courts, and there are standards in the appellate procedures that require you to make arguments on appeal. So when they said the district court heavily waived evidence offered from the defendant appellee outside of discovery, Mr. Barnett disputed on the record the validity of the evidence offered by defendant appellee. That's a waiver by a pro se litigant. He didn't develop the argument in his brief. Well, you don't say that he waived the issue. You say that he just didn't come forward with facts sufficient to create a material dispute, right? Well, he waived the argument on appeal. You're arguing that he had waived this argument on appeal because he didn't develop the argument that we have been talking about, that we understood from the brief. You're saying he waived the – oh, sorry. We're talking about the conversion to summary judgment. Yeah. I'm saying – It's different than that. No, no, Your Honor. I'm saying that they only raised the issue on appeal whether or not the district court properly converted to summary judgment. They didn't raise any argument with regard to whether or not there was sufficient evidence to dispute our motion for summary judgment. So your argument is that what we've been talking about was not at all raised. So we drew this from the briefing, but it was not raised by them, in fact, in the briefing. Yes, Your Honor. Thank you very much. Thank you. We'll hear from Mr. Barnett and Mr. Barnett, Jr. So one minute for Mr. Barnett. Good morning again, Your Honor. Can I just ask this question about – so we do have these cases that say when there's a recording or some kind of documentary evidence, it's not enough for the person contesting that evidence on summary judgment to just say that it's not reliable or it's not accurate. And so you have to come forward with some kind of objective evidence. And so I'm thinking about what you could have come forward with. And it occurs to me, you said that you always put this information on other job applications. So do you have other job applications where – If it would please this Honorable Court in reviewing my own records that I keep, as I said before, in going through this whole litigation as a pro se with New Jersey Transit and the Attorney General's Office in New Jersey for seven and a half years, I have a record in my papers back here dated – I'm not asking for it now. I'm asking – I'm just saying I certainly have a record of something on November 14th for a job that I applied to. And clearly it says that I was – Is that incorrect? No. It was another job. So this is an application you kept? Yes. This is a copy of one that I was able to keep. As opposed to the Amtrak. As opposed to Amtrak. Well, I couldn't keep it because you couldn't print it. It's a closed server. My question is this. So when Amtrak comes forward with this application in the proceedings below, why didn't you come forward and say, look, here's the way I always do these applications. That's why the Amtrak one can't possibly be an accurate representation of the application that's submitted. Because we – well, what happened was in addition to the application itself, I had come to find out in between the hearing on March 27th and the time of summary judgment, I raised the issue of one of the former supervisors, James Halloran, having firsthand knowledge of my termination. That's a different issue, right? Right. But it still goes to notice because it was addressed on March 27th in the hearing in front of Judge Fowler. And Mr. Ng . . . When was the last time you saw this application? The Amtrak application? It was on March 5th, 2015, the day I submitted it. So Amtrak also has this affidavit that says it's impossible for them to have manipulated the application, right, by the IT specialist? And I read that. And do you have any facts suggesting that's inaccurate? Well, the first thing was I did bring to the attention of the court that the documents that they provided, first of all, were printed with a date stamp on them from one year prior to the person in IT who alleged that they were a custodian of the records. This document was printed and it had a URL address on the bottom of the page, meaning like it was a screenshot. And I said that was not my application. It says clearly on the bottom it is an employee profile, not the application. Now, the values in there, I knew there was a problem between Exhibit A and Exhibit B that defendants presented to the court because one value, I clearly show a referral. He's like a brother to me. We've been best friends for about 15 years, Michael A. Crawford. He's a locomotive engineer who used to work for me at ExxonMobil delivering gasoline. He never had locomotive engineer experience. He currently works there. He's the one who encouraged me to apply. And I did say, I said, no, because I believe I'm blackballed behind the relationship that I was certainly aware of between New Jersey Transit supervisory personnel and Amtrak supervisory personnel, not knowing that, in fact, one of New Jersey Transit's former supervisory personnel is now an Amtrak supervisory personnel who, in fact, was the student coordinator at the time of my application responsible for viewing the applications. It is plausible to think that this person would see the trigger, New Jersey Transit. Hey, who is this guy? And the reason I know he's that because Mike Crawford is senior to Mr. Halloran, yet Mr. Halloran gave him his what we call check ride by a designated supervisory locomotive engineer. And Mike said, do you know A.J. Barnett? He said, yeah, I know him. But in his affidavits that he filed with the court, he said, no, never heard of this guy until November 6, 2018. Never heard of him, never heard of his son. But he certainly heard of me. We've kept you past your time. Yes. Thank you, Your Honor. Your Honor, I would go and argue that the reason we put in our appeal the issue with the conversion to a summer judgment was the fact we never got discovery because everything that Amtrak has offered so far has been of their own remission. They have chosen. We have yet to have the power to force them through subpoena. That would have been granted us. Did the court say, I'm going to convert this to a motion for summary judgment and ask for any evidence you have? She did ask for any evidence. We didn't have anything at the time being. I would have been able to grab some if we were to go into discovery. How would I grab any information without discovery? Did you need to do that? No, I thought I'd. I'm sorry. What did the district court say? The district court just really said that the summary judgment motion was limited strictly to the idea of notice, the fact that Amtrak did not have notice of. But that was argued in when Mr. Barnett said he, when he complained in regards to the application that was given and what they promoted, what they presented to us. They presented a lot of evidence, but yet to present a litigation hold that should have been popped up when the EEOC first brought the case to their attention in 2015. The district court said, I'm going to convert the motion. You have 21 days to present all material pertinent to this issue, right? Yes. And then you submitted another brief that had copies of emails and this LinkedIn page from Mr. Halloran. You submitted other evidence, right? Yes. Did you say that you needed discovery to obtain additional evidence beyond what you submitted on summary judgment? No. So you were forsaken? Yes. Did it just fail to let you know that you had that opportunity to? No, I did not know that I could. Are you inviting them? No. There's nothing in writing. I didn't know that I could ask for discovery. All right. Thank you very much. Board reserve decision. That concludes the final case on our oral argument calendar for today. Court is adjourned. Thank you.